63 N.J. Super. 500 (1960)
164 A.2d 764
DR. HENRI E. ABEL, JOHN SZOSTEK AND JOSEPH BUTT, PLAINTIFFS-APPELLANTS,
v.
BOARD OF WORKS OF CITY OF ELIZABETH, MAYOR OF THE CITY OF ELIZABETH, THE CITY OF ELIZABETH, BUILDING INSPECTOR JOHN T. BENESCH OF THE CITY OF ELIZABETH, VISITING NURSE ASS'N OF EASTERN UNION COUNTY, UNION COUNTY TRUST COMPANY, UNION COUNTY SAVINGS BANK, AND JERSEY MORTGAGE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1960.
Supplemental Briefs Submitted October 27, 1960.
Decided October 31, 1960.
*503 Before Judges GOLDMANN, CONFORD and KILKENNY.
Mr. Joseph Butt argued the matter for appellants.
Mr. H. Russell Morss, Jr., argued the cause for respondents Union County Trust Company, Union County Savings Bank and Jersey Mortgage Company (Messrs. O'Connor, Morss & O'Connor, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs appeal from a Law Division judgment dismissing their proceeding in lieu of *504 prerogative writs attacking the validity of an amendment to the Elizabeth zoning ordinance.

I.
The Elizabeth Board of Public Works is, under the city charter and appropriate legislation, the municipal legislative body insofar as zoning is concerned. On July 16, 1958 Richard R. O'Connor, Esquire, made application to the Board on behalf of the Union County Trust Company, Union County Savings Bank, Jersey Mortgage Company and others to rezone from Residence C to Business A classification an area of some 8 1/2 acres adjoining the business center of Elizabeth. The application was accompanied by copies of a survey prepared by Luster & Luster, licensed professional engineers and land surveyors. This survey, in the form of a large map, showed the area to be rezoned in heavy outline, as well as the surrounding area, in some detail, including streets, individual plots, ownerships and distances. The 8 1/2-acre area with which we are concerned is bisected in a north-south direction by Union Avenue, one block of which, between Morris Avenue and Prince Street, is to be rezoned. Plaintiffs live on the eastern side of this block.
The application and survey map were presented to the Board of Public Works at its regular meeting on July 24, 1958 and, after consideration by it, referred to the Elizabeth Planning Board. The Planning Board requested its consultant, I. Candeub & Associates, to study the matter and report. The consultant did so and on August 26, 1958 submitted a memorandum which recommended, on the basis of the Elizabeth Master Plan and the character of existing and recent development in the general area, that the specific area under consideration be rezoned from Residence C to Business A.
The memorandum noted that the surrounding area was zoned Business B, except for adjoining blocks to the north *505 zoned Residence A, B and C, and Business A. Single and two-family residences are permitted in Residence A and B zones, respectively. These are also permitted in a Residence C zone, as are multiple-family dwellings, including apartments and apartment hotels. The surrounding Business B zone permits almost any type of commercial establishment and a limited amount of light industrial use. Under the existing zoning ordinance, the following uses are permitted in a Business A zone (the rezoning requested for the area in question): any use permitted in a residence zone, retail stores, banks and fiduciary institutions, barber shops, offices, studios, restaurant or lunch counters, telephone exchanges, art galleries, and undertakers and embalmers' establishments. The consultant's memorandum noted that in the area considered for rezoning the predominant use on the easterly side of Union Avenue is single and two-family dwellings, the majority of which are in good or fair condition. On the westerly side are a Knights of Columbus clubhouse with parking, a 32-family apartment house, an old house recently purchased by the Visiting Nurse Association of Eastern Union County (this was torn down, and the lot is now vacant), a large single-family residence containing a doctor's office, and a recently abandoned public school which the city is considering using as a City Hall Annex. This description by the consultant of existing uses is confirmed by the testimony taken in the Law Division, except that there should be added to the description of uses on the westerly side of Union Avenue a dwelling with a real estate broker's office on the first floor.
The surrounding land uses to the south, east and west of the area are concededly commercial in nature. That part of Prince Street, which bounds the area to be rezoned on the north, contains two office buildings converted from residences, a single-family residence and doctor's office, and a church with its parking lot and playground, in the block between Westminster Avenue on the east and Union Avenue; between Union Avenue and Irvington Avenue to the west *506 there are a church, a vacant lot, and a firehouse, all in a Business A zone.
The consultant's memorandum further noted that the Elizabeth Master Plan, which was adopted by the Planning Board of the city on December 27, 1955, proposed development of the area in question for general commercial usage. The area is contiguous to what the Master Plan map shows as the central business district of the city.
It thus appears from the memorandum, as well as the testimony, that the area to be rezoned is surrounded on three sides by commercial uses; on the fourth side, the north, there is an immediately adjacent strip now in commercial, church and public use, beyond which lies a residential area of medium density.
On August 26, 1958 the Planning Board considered the rezoning request, the survey map accompanying it, and the consultant's report, and unanimously recommended to the Board of Public Works that the area be rezoned from Residence C to Business A. The recommendation was received by the Board of Public Works at its regular meeting on September 4, 1958. At its request Mr. O'Connor had Luster & Luster prepare a description of the area to be rezoned, based on the survey map previously submitted. We have examined this description and find that it precisely delineates the area bounded by a heavy line on the map. An amendatory zoning ordinance containing this description, and rezoning the area from Residence C to Business A, was then prepared and introduced. The Board of Public Works held a public hearing on the ordinance at its meeting of September 25, at which time it heard plaintiffs' present attorney and several Union Avenue residents in opposition, as well as Mr. O'Connor and several representatives of the applicant banks and of the Visiting Nurse Association in support of the rezoning. At the conclusion of the hearing the Board unanimously adopted the ordinance.
Plaintiffs filed their complaint on November 7, 1958, alleging that the amendatory ordinance constituted an abuse *507 of discretion and was arbitrary, unreasonable and capricious; the Board of Public Works had prejudged the case, failed to hold a bona fide hearing, and was prejudiced in favor of the applicants; the ordinance violated R.S. 40:55-32 because not in accordance with a comprehensive plan or designed for one or more of the various purposes set out in the statute; the ordinance was illegal because it constituted spot-zoning; and, finally, the action of the Board of Public Works violated the doctrine of res adjudicata. Defendant applicants filed an answer and the matter was pretried, plaintiffs contending that the action of the Board of Public Works "was arbitrary, capricious, unreasonable, illegal and not in conformity with N.J.S.A. 40:55-32 [and] constituted spot-zoning."
After two days of testimony and a personal inspection of the subject area the Law Division judge concluded that none of the contentions raised by plaintiffs was valid. He found as a fact that the rezoned area was located in the central business district and surrounded on three sides by land zoned for business use  "a small island located in the central business district." He concluded that plaintiffs' proofs did not overcome the presumption in favor of the amendatory ordinance by a clear showing that it was unreasonable, arbitrary or capricious; in fact, the greater weight of the evidence was to the contrary. The ordinance did not constitute spot-zoning, was in accordance with the Elizabeth Master Plan, and represented good municipal planning.
Plaintiffs thereafter moved for a new trial on the ground that the trial judge was prejudiced against their attorney. The motion was denied and the judgment here under review entered. A further attempt to show that the judge had been prejudiced came to nothing. Although this aspect of the case is not raised in the brief, plaintiffs have entirely improperly included in their appendix material related thereto, and we therefore observe, in fairness to the trial judge, that there is not a scintilla of evidence therein to support the charge.

*508 II.
Plaintiffs filed their notice of appeal on March 23, 1960. The transcript was filed April 19, 1960, so that appellants' brief was due May 19. On application duly made, the time for perfecting their appeal was extended to June 25, 1960. Despite this extension, plaintiffs' brief and appendix were served on July 20, 1960. Defendants have moved to suppress plaintiffs' brief and appendix and to dismiss the appeal. In other circumstances we would not hesitate to do so, and this for the following reasons.
(1) Plaintiffs have not complied with the requirements of R.R. 1:7-1 and 1:7-2, made applicable to this court by R.R. 2:7-1. Their appendix includes only the transcript of the trial proceedings, the trial court's opinion, the transcript of argument on their motion for a new trial, the order for entry of judgment and the notice of appeal. They have supplied none of the pleadings  the complaint, answer, pre-trial order, or judgment entered by the clerk. They have included none of the exhibits, even though in their argument they rely heavily upon such items as the ordinance under attack, the survey map of Luster & Luster, the Elizabeth Master Plan, certain sketch maps made by the Planning Board's consultant, and the consultant's memorandum to that Board. Under their res adjudicata argument they rely upon the record in Butt v. Board of Public Works of Elizabeth, Dockets L-9481-55 and A-262-56, an action which resulted in the setting aside of a variance granted to the Visiting Nurse Association of Eastern Union County for an 80' x 200' lot in the middle of the westerly side of Union Avenue. Nonetheless, they have not supplied us with appropriate portions of the record nor the Appellate Division decision, rendered June 13, 1957 and not officially reported. Further, although they raise new matter under the first point of their brief  that the amendatory ordinance is invalid because not submitted in advance to the Planning Board for approval, as required by N.J.S.A. 40:55-35  *509 their appendix does not include any of the minutes of the Planning Board or the Board of Public Works. As a result of all this, defendants have been put to the expense of supplying most of this material in a supplemental appendix.
The rules relating to briefs and appendices on appeal have as their prime purpose the orderly and considered presentation of the matter on appeal so that the court may have before it such parts of the record and such legal authorities as will be of help in arriving at a proper determination. Gargano v. Venezio, 37 N.J. Super. 129 (App. Div. 1955), and cases there cited. Our rules of court are more than mere guides and admonitions. They were made to be complied with, and should not be lightly disregarded. DeBow v. Lakewood Hotel and Land Ass'n, 52 N.J. Super. 288, 290 (App. Div. 1958). Counsel's failure to supply an adequate appendix is inexcusable.
(2) Nor have plaintiffs complied with the requirements of R.R. 1:7-12, relating to the time for service and filing of briefs, or R.R. 1:7-13, dealing with extension of time to perfect an appeal, made applicable to this court by R.R. 2:7-3. Notwithstanding the liberal extension of time to June 25, 1960 granted plaintiffs to perfect their appeal, they did not serve their brief until July 20, nor file it with this court until July 21. Ordinarily, this would be a reason for dismissing the appeal. Gargano v. Venezio, above; Mestice v. Board of Adjustment of Neptune City, 35 N.J. Super. 313, 317 (App. Div. 1955).
(3) Again, the argument plaintiffs raise in point I of their brief (failure to submit the amendatory ordinance to the Planning Board for approval as required by statute), and point IV (the Elizabeth Master Plan was improperly admitted because its authenticity was not proved), were not raised in the trial court. Plaintiffs' brief does not so indicate, as required by R.R. 1:7-1(c). The rule provides that
"* * * If the questions involved include any not presented to the court below, this fact shall be noted. The foregoing requirements *510 are to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in or necessarily suggested by the statement of questions involved."
The basic rule applicable to appellate practice is that questions or issues not raised in the lower court will not ordinarily be reviewed on appeal. Devlin v. Surgent, 18 N.J. 148, 153 (1955); Apex Metal Stamping Co. v. Alexander & Sawyer, Inc., 48 N.J. Super. 476, 483 (App. Div. 1958). As we noted in Locks Laboratories, Inc. v. Bloomfield Molding Co., 35 N.J. Super. 422, 428-9 (App. Div. 1955), the object of an appeal is to correct errors properly noted below  not to retry a case. The arguments raised in plaintiffs' brief under points I and IV were not mentioned in their complaint, in the pretrial order, or at the trial. There was nothing whatsoever to alert either the trial court or counsel to a realization that these matters were in issue. Nor were they mentioned in plaintiffs' motion for a new trial.
(4) Finally, plaintiffs have not complied with R.R. 1:7-1(c), dealing with the statement of the questions involved, which should follow the table of contents and the table of citations in the brief. Point IV of plaintiffs' brief, relating to the alleged improper admission of the Elizabeth Master Plan into evidence, is not included by direct or indirect reference in plaintiffs' "Statement of Questions Involved."
We have discussed these deficiencies at length in order once again to alert the bar to the necessity of strict compliance with the cited rules governing appellate procedure. It is only because this case involves a matter of public importance to the City of Elizabeth and its residents that we have in this instance elected to overlook plaintiffs' flagrant disregard for the rules. Were the situation otherwise, we would suppress the brief and appendix and dismiss the appeal out of hand.
Although plaintiffs did not raise below two of the contentions they now make, so that (as we have said) this *511 court would not ordinarily consider them, we will dispose of them because they involve an important question of public policy. Fischer v. Bedminster Tp., 11 N.J. 194, 200-201 (1952); Morin v. Becker, 6 N.J. 457, 460 (1951); Isola v. Belmar, 34 N.J. Super. 544, 554 (App. Div. 1955).
We therefore proceed to dispose of the arguments raised.

III.
Plaintiffs contend, under their point I, that the amendatory ordinance is invalid because it had not been submitted to the Elizabeth Planning Board for approval, as required by N.J.S.A. 40:55-35. That section provides that a zoning ordinance may be amended by ordinance "but no amendment or change shall be effective unless the ordinance proposing such amendment or change shall first have been submitted to the planning board, when such board exists, for approval, disapproval or suggestions, * * *." The statutory requirement is mandatory. Hasbrouck Heights Hospital Ass'n v. Hasbrouck Heights, 15 N.J. 447 (1954).
The amendatory ordinance was introduced and had its first reading at a meeting of the Board of Public Works held September 11, 1958. It apparently had been prepared by the city attorney, and described the area to be rezoned in the exact language of a description which had been prepared by Luster & Luster on request on September 8, 1958 and forwarded to the secretary of the Board of Public Works that day. There can be no question  in fact it is conceded  that this ordinance was never before the Planning Board when it gave its unanimous approval to the rezoning at its August 26, 1958 meeting. Did this invalidate the ordinance? We are of the opinion that it did not.
True, N.J.S.A. 40:55-35 requires that the amendatory ordinance first be submitted to the Planning Board for approval, where one exists. It cannot be that the legislative intention was that the Planning Board pass upon the draftsmanship or form of the ordinance. Such legal matters *512 are left to the attorney who services the Board. The obvious legislative purpose was to make sure that the substance of any proposed zoning amendment would have a critical and expert review by the one municipal agency which has an ongoing concern with municipal planning. The statutory requirement was introduced when R.S. 40:55-35 was amended by L. 1948, c. 305, § 4. That law stems from Assembly Bill No. 307 of the 1948 Legislature. The Statement attached to the bill notes, among other things, that the amendments it proposed to make to the Zoning Act were "designed to eliminate certain conditions which permitted and even encouraged municipalities to set up zoning without due regard for its effect upon their possible and desirable development," and were being presented in the light of experience since the enactment of the original law, both in New Jersey and throughout the United States.
The Elizabeth Planning Board had before it not only the formal request of the applicants' attorney for the rezoning, but the informative survey map prepared by Luster & Luster. It also had the benefit of its consultant's memorandum embodying the results of a study of the requested rezoning in the light of the Master Plan recommendations and the character of existing and recent development in the area, together with a recommendation that the rezoning to Residence A classification be approved. In addition, the Planning Board had the Master Plan which it had approved at the close of 1955, as well as its current knowledge of developments in Elizabeth as related to the Board's planning function.
The survey map which, as noted, showed the area to be rezoned in heavy outline, was an exact and clear depiction of the section of the city which would be affected by the proposed rezoning, and its relation to the immediately surrounding territory. It conveyed to the members of the Planning Board, perhaps more graphically than could any description in an ordinance, precisely what lands and premises were involved in the change from Residence C to Business A classification. Having studied this map and the consultant's *513 memorandum in the light of the Master Plan, the Board recommended the change without qualification.
There was nothing more here than a technical non-compliance with N.J.S.A. 40:55-35. What is important is that the Planning Board got precisely the kind of information which the Legislature wanted it to get in reviewing a proposed zoning change, and it exercised its expert judgment on the basis of that information. The letter of the statute may not have been followed, but its sensible purpose and true intent were. The statute has been satisfied in substance. Compare the token and superficial compliance in the Hasbrouck Heights case, above.
Accordingly, we hold the amendatory ordinance valid. At the same time, it should be made clear that the preferable practice to be followed is for a governing body to submit its ordinance to the Planning Board, as directed by the statute.

IV.
It is next contended that the Board of Public Works was barred from enacting the ordinance in question by virtue of the application of res adjudicata. The reference here, as explained above, is to Butt v. Board of Public Works of Elizabeth, an action instituted in 1956 and challenging the variance granted by the Elizabeth Board of Adjustment, permitting a business and commercial building to be erected on premises which the Visiting Nurse Association of Eastern Union County had contracted to buy from one Anna Kreutz, located in the middle of the westerly side of the Union Avenue block in question. We have examined the files of that case, both in the Law Division which granted summary judgment for defendants on their counterclaim and ordered the building inspector of Elizabeth to issue them a building permit (Docket L-9481-55), and in the Appellate Division which, in an unreported opinion handed down on June 13, 1957, reversed and entered judgment in favor of plaintiff, thereby ruling against the grant of the variance (Docket A-262-56).
*514 The claim of res adjudicata has no application here. There is no identity of issues, Baldwin Construction Co. v. Essex County Board of Taxation, 16 N.J. 329, 345 (1954); Morristown Trust Co. v. Thebaud, 43 N.J. Super. 209, 217 (Ch. Div. 1957). Nor is there an identity of parties to the litigation. Templeton v. Scudder, 16 N.J. Super. 576, 579 (App. Div. 1951); Smith v. Fischer Baking Co., 105 N.J.L. 567, 568-9 (E. & A. 1929). The case of Phillips v. Township Council of Teaneck, 125 N.J.L. 77 (Sup. Ct. 1940), on which plaintiffs rely, is not in point since it involved two successive attacks by the same parties against the governing body of the municipality for unreasonable, capricious and arbitrary conduct in adopting a zoning ordinance affecting an identical area.
The legislative body of a municipality, in adopting a zoning ordinance or an amendment thereto under the authority of N.J.S.A. 40:55-30, must act in accordance with the provisions of N.J.S.A. 40:55-31, which speaks of areas "best suited to carry out the purposes" of the Zoning Act and imposes the requirement of uniformity, as well as R.S. 40:55-32, dealing with the purposes and the controlling essential considerations of zoning.
An application for a variance is made to the board of adjustment, an administrative body sitting in a quasi-judicial capacity. It is invested with sole jurisdiction to grant an exception or a variance pursuant to the terms of N.J.S.A. 40:55-39(a) to (c), inclusive, or to recommend to the governing body the granting of a variance when the provisions of N.J.S.A. 40:55-39(d) apply. Ward v. Scott, 11 N.J. 117, 121-2 (1952).
The distinction between the two types of proceedings  the adoption of a zoning ordinance or an amendment thereto, and the grant of an exception or a variance or the recommendation of the grant of a variance  and the complete difference in the nature of the issues involved, has been recognized by our Supreme Court in an unequivocal manner in the Ward case and in Conlon v. Board of Public Works *515 of Paterson, 11 N.J. 363 (1953). There is no need to expand on what was said there.
In short, the authorities are in agreement that the principles of law and the issues involved in an attack upon the granting of a variance are substantially different from those involved in an attack upon a zoning ordinance or an amendment to a zoning ordinance. We therefore find no merit in plaintiffs' second point.

V.
Plaintiffs next argue that the action of the Board of Public Works was arbitrary, capricious and unreasonable, and constituted spot-zoning for the sole private benefit of defendant applicants. We disagree, essentially for the reasons given by the trial judge in his oral opinion.
The rezoning was the result of studied consideration by the Planning Board as well as by the Board of Public Works after affording a full public hearing to those who supported or opposed the zoning amendment. We can add nothing to what this court said in Bartlett v. Middletown Township, 51 N.J. Super. 239, 258-263 (1958), certification denied 28 N.J. 37 (1958), in holding that what the Board of Public Works did here was reasonable and valid. Its action finds complete support in the Master Plan, the recommendation of the Planning Board, and in the record made in the Law Division, especially that part which sets out the testimony of the experts who were called by defendants in support of the municipal action.

VI.
Finally, plaintiffs claim under point IV of their brief that the Elizabeth Master Plan was improperly admitted in evidence, since it was hearsay and its competency and authenticity were not proven. The Master Plan, as already stated, was adopted by the Planning Board of Elizabeth at the close of 1955. Such a plan is the creature of *516 statute, N.J.S.A. 40:55-1.10 to 1.13, inclusive; N.J.S.A. 40:55-1.35. It is a public record and the product of the effort of public officials. If the spirit of the statute making provision for the preparation and adoption of such a plan is to be served, it would be purblind on the part of municipal officials to ignore its contents and recommendations when considering a zoning change, whether by way of variance or amendment of an existing zoning ordinance.
The simple answer to plaintiffs' present argument is to be found in the record. When defendants' attorney offered the Master Plan as an exhibit, subject to "counsel's permission and stipulation," the attorney for plaintiffs stated that he had no objection. They may not now complain. Priest v. Poleshuck, 15 N.J. 557, 564 (1954), affirming 29 N.J. Super. 401 (App. Div. 1954).
The judgment is affirmed.